# CHADBOURNE
## & PARKE LLP

VIOLY & CO.
10 EAST 53RD STREET
34TH FLOOR
NEW YORK, NY 10022

February 20, 2008
Invoice ******
Page    2



| | | | |
|---|---|---|---|
| 01/28/08 | B. DINABURG | Conference with ET, review of tax comments. | 0.50 hrs. |
| 01/28/08 | E. TUCNER | Review and draft comments on Violy & Co LLC operating agreement; Phone conversation with Barry Dinaburg; Draft an e-mail to Talbert Navia with comments. | 0.90 hrs. |

Total Fees for Professional Services.............. $46,653.00

*Payment Due Upon Receipt*

NY3 - 46230 01

CHADBOURNE
& PARKE LLP

VIOLY & CO.
10 EAST 53RD STREET
34TH FLOOR
NEW YORK, NY 10022

February 20, 2008
Invoice ******
Page    3

OTHER CHARGES

| | |
|---|---|
| FILING FEES | 45.52 |
| COMPUTER LEGAL RESEARCH | 10.00 |
| LOCAL TRANSPORTATION | 31.00 |
| MEALS | 49.08 |
| SECRETARIAL OVERTIME | 450.14 |
| REPRODUCTION | 241.60 |
| TELEPHONE CHARGES | 160.13 |
| WORD PROCESSING | 375.28 |

Total Other Charges................................   $1,362.75

TOTAL DUE FOR THIS MATTER.....................................   $48,015.75

*Payment Due Upon Receipt*

NY3 - 462270.01

*DM*

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100 fax (212) 541-5369

# CHADBOURNE
## & PARKE LLP

Talbert I. Navia
direct tel (212) 408-5316  fax (212) 974-0358
tnavia@chadbourne.com

April 25, 2008

Mr. Marcus Ribeiro
Violy & Co.
10 East 53rd Street, 34th Floor
New York, New York  10022

Re:  Information Statement No. 8109-1641

Dear Marcus:

Enclosed please find Information Statement No. 8109-1641 in the amount of $4,178.05 for professional services in connection with Estate Planning and VMS Structure and Set-up of Violy & Co. Entities with CSC through March 31, 2008.

For your information, the current outstanding balance through March 31, 2008 for the Violy General Matter covers the following statements:

| Statement No. | Dated | Amount |
|---|---|---|
| 8109-1399 | 2/19/07 | $    3,527.00 |
| 8109-1409 | 3/12/07 | $  14,264.62 |
| 8109-1416 | 3/12/07 | $  15,430.00 |
| 8109-1480 | 9/28/07 | $154,322.80 |
| 8109-1536 | 10/15/07 | $    2,348.21 |
| 8109-1554 | 11/13/07 | $    5,428.02 |
| 8109-1599 | 01/25/08 | $  13,842.18 |
| 8109-1613 | 02/20/08 | $  48,015.75 |
| 8109-1641 | 04/25/08 | $    4,178.05 |
| Totals |  | $261,356.63 |

New York  Washington  Los Angeles  Houston  London (a multinational partnership)  Moscow  Warsaw (a Polish partnership)  Kyiv  Almaty  Beijing

CHADBOURNE
& PARKE LLP

Mr. Juan Osorio                    -2-                    April 25, 2008

Please do not hesitate to contact me if you have any questions or comments.

Sincerely,

Talbert I. Navia

Enclosures

BY HAND

# CHADBOURNE
# & PARKE LLP

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100 fax (212) 541-5369

Statement No. 8109-1641

April 25, 2008

VIOLY & CO.
10 EAST 53RD STREET
34TH FLOOR
NEW YORK, NY  10022

ATTN: JUAN OSORIO

FOR PROFESSIONAL SERVICES rendered through
March 31, 2008, in connection with Estate Planning &
VMS Structure, Set-up of Violy & Co. Entities with
CSC, as set forth in the enclosed narrative.                    $1,408.00

                    Other Charges                    $ 2,770.05

Total Amount Due                                               $4,178.05

In view of the possible mail delays, we would appreciate payment by wire transfer as follows:



*Payment Due Upon Receipt*

```
VIOLY & CO.                                    April 25, 2008
10 EAST 53RD STREET                            Invoice *****
34TH FLOOR                                     Page    1
NEW YORK, NY 10022
```

For Services Through March 31, 2008

Our Matter #18261.001
        GENERAL

| 02/29/08 | S. BUZAGLO | Prepared and filed Certificates of Formation of Violy Advisors LLC; Violy Management LLC; and Violy Group LLC in DE. | 2.50 hrs. |
| 03/05/08 | S. BUZAGLO | Communications with CSC in connection with providing them with contact information for sending correspondence, tax notices, invoices etc. | 0.60 hrs. |
| 03/06/08 | J. ROBINS | MR re: trustee fees, appraiser fees. | 0.10 hrs. |
| 03/14/08 | S. BUZAGLO | Processed CSC invoices for formation of Violy entities. | 0.50 hrs. |
| 03/23/08 | J. ROBINS | Review; email to Balfour. | 0.30 hrs. |

Total Fees for Professional Services............... $1,408.00

OTHER CHARGES

| COURIER RELATED CHARGES | 87.40 |
| FEDERAL EXPRESS | 16.32 |
| FILING FEES | 1555.70 |
| LOCAL TRANSPORTATION | 491.14 |
| MEALS | 70.50 |
| SECRETARIAL OVERTIME | 63.97 |
| REPRODUCTION | 159.80 |
| TELEPHONE CHARGES | 119.05 |
| WORD PROCESSING | 206.17 |

Total Other Charges............................... $2,770.05

TOTAL DUE FOR THIS MATTER.......................... $4,178.05

*Payment Due Upon Receipt*

# Kook Affirmation

# Exhibit C

# EXHIBIT C

Division of Corporations - General Information - Entity Details                     Page 1 of 1

Frequently Asked Questions   View Search Results   Summary of Charges   Logout

## Entity Details

| | | | |
|---|---|---|---|
| File Number: | 4512245 | Incorporation Date / Formation Date: | 02/29/2008 (mm/dd/yyyy) |
| Entity Name: | VIOLY GROUP LLC | | |
| Entity Kind: | LIMITED LIABILITY COMPANY (LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |
| Status: | CEASED GOOD STANDING | Status Date: | 06/01/2010 |

**TAX INFORMATION**

| | | | |
|---|---|---|---|
| Last Annual Report Filed: | NO REPORTS ON FILE | Tax Due: | $ 497.25 |
| Annual Tax Assessment: | $ 0.00 | Total Authorized Shares: | 0 |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | CORPORATION SERVICE COMPANY | | |
| Address: | 2711 CENTERVILLE ROAD SUITE 400 | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19808 |
| Phone: | (302)636-5401 | | |

**FILING HISTORY (Last 5 Filings)**

| Seq | Document Code | Description | No. of pages | Filing Date (mm/dd/yyyy) | Filing Time | Effective Date (mm/dd/yyyy) |
|---|---|---|---|---|---|---|
| 1 | 0102Y | Register L.L.C. | 1 | 02/29/2008 | 15:07 | 02/29/2008 |

Back to Entity Search

To contact a Delaware Online Agent click here.

# Kook Affirmation

# Exhibit D

# EXHIBIT D

Division of Corporations - General Information - Entity Details                    Page 1 of 1

## Entity Details

| | | | |
|---|---|---|---|
| File Number: | 3703267 | Incorporation Date / Formation Date: | 09/12/2003 (mm/dd/yyyy) |
| Entity Name: | VMS, LLC | | |
| Entity Kind: | LIMITED LIABILITY COMPANY (LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |
| Status: | CANCELLED-VOIDED | Status Date: | 06/01/2006 |

**TAX INFORMATION**

| | | | |
|---|---|---|---|
| Last Annual Report Filed: | NO REPORTS ON FILE | Tax Due: | $ 1,062.00 |
| Annual Tax Assessment: | $ 0.00 | Total Authorized Shares: | 0 |

**REGISTERED AGENT INFORMATION**

| | |
|---|---|
| Name: | NATIONAL REGISTERED AGENTS, INC. |
| Address: | 160 GREENTREE DRIVE SUITE 101 |
| City: | DOVER |
| State: | DE |
| Phone: | (302)674-4089 |

| | |
|---|---|
| County: | KENT |
| Postal Code: | 19904 |

**FILING HISTORY (Last 5 Filings)**

| Seq | Document Code | Description | No. of pages | Filing Date (mm/dd/yyyy) | Filing Time | Effective Date (mm/dd/yyyy) |
|---|---|---|---|---|---|---|
| 1 | 0102Y | Register L.L.C. | 1 | 09/12/2003 | 14:59 | 09/12/2003 |

Back to Entity Search

To contact a Delaware Online Agent click here.

https://delecorp.delaware.gov/tin/controller                                    12/9/2010

# Kook Affirmation

# Exhibit E

# EXHIBIT E

Division of Corporations - Online Services

Delaware.gov | Text Only

Governor | General Assembly | Courts | Elected Officials | State Agencies

JOHN _____ _____ || _____ _____ _____

## Department of State: Division of Corporations

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent
Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws
Online
Name Reservation
Entity Search
Status
Validate
Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and
Fees
Taxes
Expedited
Services
Service of Process
Registered Agents
Get Corporate
Status
Submitting a
Request  How to
Form a New
Business Entity
Certifications,
Apostilles &
Authentication of
Documents

Frequently Asked Questions

To retrieve information on a Delaware entity, Key in the name of the entity you are searching. The search results will return both active and inactive entities from our database. This is not an indication of the current status of an entity. The information provided in this application is real time and reflects the information on our database as of the date of the search. When the list of names is returned click the name and the information page will be returned.

The entity information provided on this website, free of charge, consists of the entity name, file number, incorporation/formation date, registered agent name, address, phone number and residency.

However, additional information can be obtained for a fee.

If you would like to order a Certificate of Status, Certified Copy of a filed document or a Plain Copy of same, please contact a Delaware online agent. Please click here.

For more information please read the Frequently Asked Questions page.

General Information Name Search

No matches found. Please try a new search.

**\* Entity Name:** VIOLY HOLDINGS LLC    **or File Number:**

This field is not case sensitive.

[ Search ]

https://delecorp.delaware.gov/tin/controller

10/21/2010

# Holmes Affidavit

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

VIOLY MCCAUSLAND-SEVE,                              :       Index No.:

          Petitioner,                   :

  - against --                                       :       <u>AFFIDAVIT</u>

CORE VALUE PARTNERS (LATIN AMERICA) LLC,           :

          Respondent.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                            X

STATE OF NEW YORK    )
                      )s.s.:
COUNTY OF NEW YORK  )

        JOSHUA M. HOLMES, being duly sworn, deposes and says:

        1.     I am a partner in the law firm Wachtell, Lipton, Rosen & Katz ("WLRK").

The firm has represented plaintiffs Violy McCausland-Seve ("McCausland") and VMS

Associates, LLC, d/b/a Violy & Company on various matters over the years. I have personal

knowledge of the facts set forth herein. The Affidavit is respectfully submitted in support of

Violy's Petition to Stay Arbitration.

        2.     Talbert Navia ("Navia") is an attorney in the law firm of Chadbourne &

Parke LLP (the "Chadbourne Firm").

        3.     WLRK represented Violy in connection with a proposed transaction

involving a structure of new entities and businesses that were to be formed for her benefit.

        4.     On December 19, 2007, I received an email from Navia, attaching a chart

setting forth the structure of the proposed new lines of business, and identifying the dozens of

trusts, holding companies, foreign affiliates and other entities that were going to be created by the Chadbourne Firm. Chadbourne labeled its chart, "Violy Comprehensive Structure and Operating Chart" (the "Chart"). (See Exhibit 1 hereto.)

       5.     The Chart identifies, among several dozen new entities and diversified businesses to be formed, a "Violy Private Equity Fund (Canadian LP)"; an "Incubator LLC (Sweat Equity)"; a "Wealth Management LLC"; a "New M&A Advisory LLC"; and a "Broker Dealer LLC".

       6.     The Chart also identifies various trusts that were to be formed to own interests in the various entities, including a "Mother's Trust 1", "Mother's Trust 2", and "New Violy Children's Trusts".

       7.     To my knowledge, these trusts, holding companies, LLCs, and other entities were not then actually formed and existing.

       8.     This new and comprehensive structure of new entities and businesses that was created and designed by Navia and the Chadbourne Firm depicted the "Existing M&A Advisory LLC" as wholly owned "100%" by Violy, off to the side and not within the chain of holding companies, trusts, affiliates, and subsidiaries.

       9.     The Chadbourne Firm drafted and sent to WLRK a proposed Limited Liability Company Agreement of Violy Group LLC ("Violy Group" and the "VG Agreement"). The Members of Violy Group were to be McCausland and a company owned by Navia called Core Value Partners (Latin America) LLC.

       10.    The proposed VG Agreement states that the purpose of Violy Group is "to act as the managing member of Violy Holdings, LLC, a Delaware limited liability company" ("Violy Holdings").

2

11.     The proposed VG Agreement states that Violy Holdings "shall (A) own all of the equity of VMS LLC and (B) create and own a multi-company platform including, without limitation, a new M&A advising firm, broker-dealer wealth management firm and private firm and such other companies as may be mutually agreed upon".

12.     At the time, I do not believe that there was a company called "VMS LLC" that was in good standing under Delaware law.  I also do not believe that McCausland had engaged in any business under the name, "VMS LLC".

13.     The proposed VG Agreement, as drafted by Chadbourne, did not mention or refer to VMS Associates LLC or Violy & Company.

14.     The proposed VG Agreement stated that Violy would own 60 percent of the Membership Interests in Violy Group, and that Navia, through his entity Core Value, would own 40 percent of the Membership Interests in Violy Group.

15.     The first draft of the VG Agreement that had been drafted by the Chadbourne Firm included a provision, in Section 4.04, stating that the "Company" – i.e., Violy Group – shall be the exclusive vehicle for each of Violy and Navia concerning the "businesses" engaged in by Violy Group.

16.     We specifically deleted that provision from the draft.  For example, in a red-lined draft dated January 8, 2008, with WLRK's comments, WLRK specifically deleted paragraph 4.04.

17.     Then, on February 8, 2008, we received a new draft from Chadbourne that had the "exclusivity" provision in Section 4.04 re-inserted into the agreement.

18.     On April, 13, 2008, WLRK sent another draft with our red-lined comments, including the deletions of Section 4.04.

3

19.     On May 9, 2008 we issued another draft, again with the "exclusivity" provision removed from the document.

20.     However, on May 27, 2008, Marcus Ribeiro ("Ribeiro"), who is head of corporate and legal affairs at Violy & Company, sent me a new draft that he had received from Chadbourne with a new form of the exclusivity provision re-inserted by the Chadbourne attorneys, into Section 4.04.

21.     We did not re-delete this provision because Mr. Ribeiro told me that Navia had re-introduced this provision based on discussions Navia had with McCausland without the participation of WLRK.  Mr. Ribeiro informed me that he was providing the agreement to me for my files and that he would "send [me] a copy of the document as soon as it was executed." However I never received an executed version.  (A copy of Mr. Ribeiro's email, dated May 27, 2008, is annexed here as Exhibit 2 hereto.)

22.     I have since learned that McCausland executed the VG Agreement approximately seven months later on or about December 2008.  McCausland did not consult with me in advance of signing that agreement.

23.     In all events, had Violy come to WLRK for advice prior to executing the VG Agreement, I would have advised her that the exclusivity provision should be deleted, as WLRK had previously deleted the provision from all prior drafts.

_____
Joshua M. Holmes

Sworn to before me this
18ᵗʰ day of April 2011

_____
Notary Public

TONI CLARK
Notary Public, State of New York
No. 01CL7712025
Qualified in New York County
Commission Expires December 31, 2014

4

# Holmes Affidavit

# Exhibit 1

Jessica Moran

| From: | TNavia@chadbourne.com |
|---|---|
| Sent: | Wednesday, December 19, 2007 5:54 PM |
| To: | JMHolmes@wlrk.com |
| Cc: | IAcevedo@chadbourne.com |
| Subject: | Violy Chart |
| Attachments: | NY2-470567-v5-Violy Structure Chart - NEW.PPT |

Violy Chart attached.


Talbert

*********************************************************

This e-mail, and any attachments thereto, is intended only
for use by the addressee(s) named herein and may contain
legally privileged and/or confidential information. If you
are not the intended recipient of this e-mail, you are
hereby notified that any dissemination, distribution or
copying of this e-mail, and any attachments thereto, is
strictly prohibited. If you have received this e-mail in
error, please notify me by replying to this message and
permanently delete the original and any copy of this e-mail
and any printout thereof.


For additional information about Chadbourne & Parke LLP
and Chadbourne & Parke, a multinational partnership,
including a list of attorneys, please see our website at
http://www.chadbourne.com



# Holmes Affidavit

# Exhibit 2

Jessica Moran

| | |
|---|---|
| From: | mribeiro@violyco.com |
| Sent: | Tuesday, May 27, 2008 5:28 PM |
| To: | JMHolmes@wlrk.com |
| Attachments: | image001.gif; Violy LLC Agreement.doc; Redline.rif |

Josh:

Believe it or not but the document hasn't been executed yet. Talbert made some changes, as you can see on the document attached, according to his discussion with Violy. I am sending you a copy for your files. I will send you a copy of the document as soon as it is executed.
Thank you,

Marcus Ribeiro
Corporate and Legal Affairs



VIOLY
AND
COMPANY

10 East 53rd Street | 34th Floor | New York, NY 10022
Direct 212 486-4914 | Main 212 486-4900 | Fax 212 486-4901
mribeiro@violyco.com

This e-mail and any attachments relating to the official business of VMS Associates, LLC and/or affiliates ["the Company"] is proprietary to the Company. It is confidential, legally privileged and protected by law. Views and opinions are those of the sender unless clearly stated as being that of the Company. If this communications is wrongfully received by an unauthorized person or mistakenly / inadvertently sent to a wrong person, any privileges are not waived. The person addressed in the e-mail is the sole authorized recipient. Please notify the sender immediately if it has unintentionally reached you and do not read, disclose or use the content in any way. The Company cannot assure that the integrity of this communication has been maintained or that it is free of errors, viruses, interceptions or interferences.

 Please consider the environment before printing this e-mail.

1

# Masillo Affidavit

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------- X
                                               :

VIOLY McCAUSLAND-SEVE,              :

                                :

                           Petitioner,    :    **Index No. __**

                                :

            - against -              :

CORE VALUE PARTNERS (LATIN AMERICA)   :    <u>**Affidavit of Thomas Masillo in**</u>
LLC,                                       :    <u>**Support of Plaintiff's Motion for a**</u>
                                           :    <u>**Permanent Stay of Arbitration**</u>
                           Respondent.    :    <u>**Pursuant to CPLR 7503**</u>

                                           :

                                           :

-------------------------------------------------------------- X

         STATE OF NEW YORK     )
                         Kings
         COUNTY OF ~~NEW YORK~~ )

THOMAS MASILLO, being sworn, deposes and says:

     1.     From 1997 until 2002 I served as Chief Financial Officer to Violy, Byorum &
Partners ("VB&P"), a company founded by Violy McCausland-Seve ("Ms. McCausland") that
focused on mergers and acquisitions work in Latin America.

     2.     In 2002, VB&P was wound down and, in 2003, Ms. McCausland founded VMS
Associates LLC ("VMS Associates"), a Delaware limited liability company which does
business under the name Violy & Company.

     3.     Since 2003, I have served as accountant and outside consultant to VMS
Associates.  I perform accounting work for and provide other day-to-day financial and
operational services to VMS Associates.

     4.     In my work as accountant and consultant for VMS Associates, I operated a
general ledger of accounts showing the income and expenses of VMS Associates.

5.      As accountant to VMS Associates, I have prepared the accounting materials to submit to VMS Associates' tax accountant each year since 2003.

6.      I have always prepared these materials for tax filing for VMS Associates with the understanding that Ms. McCausland is the sole, 100% owner.

7.      In the course my work for VMS Associates, I have never seen any documentation to indicate that Ms. McCausland is not the sole, 100% owner of VMS Associates.

8.      Based on my work for VMS Associates, my understanding is that Ms. McCausland is the sole, 100% owner of VMS Associates.

9.      I have never conducted any accounting or consultancy work for "Violy Group LLC."

10.     I have never conducted any accounting or consultancy work for "Violy Holdings LLC."

11.     I have never conducted any accounting or consultancy work for "VMS LLC."

12.     To my knowledge, VMS Associates never provided Navia with a Form K1 for reporting a partnership interest in VMS Associates.

13.     In 2009, I provide provided "Talbert Navia -- Core Value" a Form 1099 showing $200,000 in miscellaneous income. A copy of that Form 1099 is attached hereto as Exhibit A.

Dated: New York, New York
       April 19, 2011

_____
Thomas Masillo

CLAUDETTE S. LALOR
Notary Public, State of New York
Qualified in King County
Reg. No. 01LA6197202
My Commission Expires Nov. 24, 2012

# Masillo Affidavit

# Exhibit A

☐ VOID   ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents $ | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| VMS Associates LLC<br>10 East 53rd Street<br>34th Floor<br>New York, NY 10022<br>212-486-4900 | 2 Royalties $ | 2009<br>Form 1099-MISC | |
| | 3 Other income $ | 4 Federal income tax withheld $ | Copy C |
| PAYER'S federal identification number 73-1680381 | RECIPIENT'S identification number 27-2101494 | 5 Fishing boat proceeds $ | 6 Medical and health care payments $ | For Payer or State Copy |
| RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code<br><br>TALBERT I. NAVIA  - Core Value<br><br>10605 SW 62nd Avenue<br><br>Miami FL 33156 | 7 Nonemployee compensation $   200000.00 | 8 Substitute payments in lieu of dividends or interest $ | For Privacy Act and Paperwork Reduction Act Notice, see the 2009 General Instructions for Forms 1099, 1098, 3921, 3922, 5498, and W-2G. |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ | |
| | 11 | 12 | |
| Account number (see instructions)          2nd TIN not. ☐ | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ | |
| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ | 17 State/Payer's state no. | 18 State income $ |

Form 1099-MISC                                        Department of the Treasury - Internal Revenue Service

UCS-840 (REV 1/2000)

REQUEST FOR JUDICIAL INTERVENTION

SUPREME COURT, NEW YORK COUNTY INDEX NO. DATE PURCHASED:

651052/ 2011

PLAINTIFF(S):
VIOLY MCCAUSLAND-SEVE

DEFENDANT(S):
CORE VALUE PARTNERS (LATIN AMERICA) LLC

| For Clerk Only |
| --- |
| IAS entry date |
| Judge Assigned |
| RJI Date |

Date issue joined: _____ Bill of particulars served (Y/N): [ ] Y [ X ] N

**NATURE OF JUDICIAL INTERVENTION** (check **ONE** box only **AND** enter information)

[ ] Request for preliminary conference

[ ] Note of issue and/or certificate of readiness

[ ] Notice of motion (return date:_____ )
Relief sought _____

[ ] Order to show cause
(clerk enter return date:_____ )
Relief sought

[ ] Other ex parte application (specify:_____ )

[ X ] Notice of petition (return date: May 2, 2011 )
Relief sought Stay Arbitration and Disqualify

[ ] Notice of medical or dental malpractice
action (specify: )

[ ] Statement of net worth

[ ] Writ of habeas corpus

[ ] Other (specify: _____ )

**NATURE OF ACTION OR PROCEEDING** (Check **ONE** box only)

**MATRIMONIAL**

| | | | |
| --- | --- | --- | --- |
| [ ] | Contested | | -CM |
| [ ] | Uncontested | | -UM |

**COMMERCIAL**

| | | | |
| --- | --- | --- | --- |
| [ ] | Contract | | -CONT |
| [ ] | Corporate | | -CORP |
| [ ] | Insurance (where insurer is a party, except arbitration) | | -INS |
| [ ] | UCC (including sales, negotiable instruments) | | -UCC |
| [ ] | *Other Commercial | | -OC |

**REAL PROPERTY**

| | | | |
| --- | --- | --- | --- |
| [ ] | Tax Certiorari | | -TAX |
| [ ] | Foreclosure | | -FOR |
| [ ] | Condemnation | | -COND |
| [ ] | Landlord/Tenant | | -LT |
| [ ] | *Other Real Property | | -ORP |

**OTHER MATTERS**

| | | | |
| --- | --- | --- | --- |
| [ ] | * _____ | | -OTH |

**TORTS**

Malpractice

| | | | |
| --- | --- | --- | --- |
| [ ] | Medical/Podiatric | | -MM |
| [ ] | Dental | | -DM |
| [ ] | *Other Professional | | -OPM |
| [ ] | Motor Vehicle | | -MV |
| [ ] | *Products Liability | | -PL |
| [ ] | Environmental | | -EN |
| [ ] | Asbestos | | -ASB |
| [ ] | Breast Implant | | -BI |
| [ ] | *Other Negligence | | -OTN |
| [ ] | *Other Tort (including intentional) | | -OT |

**SPECIAL PROCEEDINGS**

| | | | |
| --- | --- | --- | --- |
| [ X ] | Art. 75 (Arbitration) | | -ART75 |
| [ ] | Art. 77 (Trusts) | | -ART77 |
| [ ] | Art. 78 | | -ART78 |
| [ ] | Election Law | | -ELEC |
| [ ] | Guardianship (MHL Art. 81) | | -GUARD81 |
| [ ] | *Other Mental Hygiene | | -MHYG |
| [ ] | *Other Special Proceeding | | -OSP |

Check "YES" or "NO" for each of the following questions:

Is this action/proceeding against a

| YES | NO | | YES | NO | |
|---|---|---|---|---|---|
| ] | [ x ] | Municipality (Specify_____) | ] | ] x | Public Authority: (Specify_____) |

| YES | NO | |
|---|---|---|
| x ] | [ ] | Does this action/proceeding seek equitable relief? |
| ] | x ] | Does this action/proceeding seek recovery for personal injury? |
| ] | [ x ] | Does this action/proceeding seek recovery for property damage? |

Pre-Note Time Frames:
(This applies to all cases except contested matrimonials and tax certiorari cases)

Estimated time period for case to be ready for trial (from filing of RJI to filing of Note of Issue):

x Expedited: 0-8 months          Standard: 9-12 months          Complex: 13-15 months

Contested Matrimonial Cases Only: (Check and give date)

| | | | |
|---|---|---|---|
| Has summons been served? | No | Yes, Date | _____ |
| Was a Notice of No Necessity filed? | No | Yes, Date | _____ |

ATTORNEY(S) FOR PLAINTIFF(S):

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| | Andrew Weissmann, Jenner & Block LLP | 919 Third Ave., 37th Fl., NY, NY 10022 | (212) 891-1600 |
| | Mark Kook, Solomon Blum Heymann LLP | 40 Wall Street, 35th Fl., NY, NY 10005 | (212) 267-7600 |

ATTORNEY(S) FOR DEFENDANT(S):

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| | Thomas E. Butler, Chadbourne & Parke LLP | 30 Rockefeller Plaza, NY, NY 10112 | (212) 408-5100 |

*Self Represented:   parties representing themselves, without an attorney, should check the "Self Rep." box and enter their name, address, and phone # in the space provided above for attorneys.

INSURANCE CARRIERS:

RELATED CASES:  (IF NONE, write "NONE" below):

| Title | Index # | Court | Nature of Relationship |
|---|---|---|---|
| Talbert I. Navia v. Violy McCausland, et al. Index No. 650865/2011 | | SUPREME COURT/NY COUNTY | |
| Blanca R. Navia v. Violy McCausland, et al. Index No. 650863/2011 | | SUPREME COURT/NY COUNTY | |
| Chadbourne & Parke LLP v. Violy McCausland, et al. Index No. 103833/2011, SUPREME COURT/NY COUNTY | | | |

I AFFIRM UNDER PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.

Dated:   4/20/2011

_____
(SIGNATURE)
ANDREW WEISSMANN

_____
(PRINT OR TYPE NAME)
VIOLY MCCAUSLAND-SEVE

_____
ATTORNEY FOR

ATTACH RIDER SHEET IF NECESSARY TO PROVIDE REQUIRED INFORMATION

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

VIOLY MCCAUSLAND-SEVE,

        Petitioner,

   -against-

CORE VALUE PARTNERS (Latin America) LLC,

        Respondent.

-------------------------------------------------------------------x

Index No. 651052/2011

## MEMORANDUM OF LAW IN SUPPORT OF PETITION UNDER CPLR 7503 TO PERMANENTLY STAY OR ENJOIN ARBITRATION AND DISQUALIFY CHADBOURNE & PARKE LLP AS COUNSEL

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 4

   I.   McCausland Founded, Manages, And Owns 100% Of Violy & Co. ................................. 4

   II.  Navia and Chadbourne Were Legal Counsel To McCausland And Violy & Co. And Billed Her For Advice Relating To The Creation Of New Business Structures ........................... 4

   III. Navia and McCausland Discussed The New Business Venture .......................................... 6

   IV. The Violy Group LLC Agreement .................................................................................. 6

   V.  The Arbitration Demand ................................................................................................. 10

ARGUMENT ......................................................................................................... 11

   I.   The Arbitration Must Be Stayed Because There Is No Unequivocal Intent To Arbitrate Any Of The Claims Asserted In Arbitration ................................................................... 11

   II.  The Arbitration Must Be Stayed Because It Involves An Unenforceable And Invalid Agreement Between An Attorney And His Client And Is Thus Not Arbitrable .............. 14

   III. In The Event The Arbitration Proceeds, Chadbourne Must Be Disqualified As Navia's Counsel Due To An Incurable Conflict Of Interest ........................................................ 20

CONCLUSION ...................................................................................................... 24

i

Petitioner Violy McCausland-Seve ("McCausland"), by her attorneys, respectfully submits this memorandum of law in support of her application pursuant to CPLR 7503 to permanently stay or enjoin the arbitration proceeding entitled *In re Core Value Partners (Latin America) LLC, and Violy McCausland-Seve*, AAA No. 131 48 Y 00889 11, and to disqualify Chadbourne & Parke LLP as counsel for Respondent.

## INTRODUCTION

In the underlying arbitration, Talbert I. Navia, Esq. ("Navia"), through an entity he controls, Core Value Partners (Latin America) LLC ("Core Value"), asserts a 40% ownership interest in a mergers and acquisitions ("M&A") advisory firm that Petitioner McCausland has owned and operated since 2003. Navia bases his claim on a December 2008 agreement, drafted by Navia and his law firm and signed by Navia and McCausland, that calls for the creation of a completely new set of entities and businesses. None of those entities and businesses is McCausland's M&A advisory firm in which Navia now purports to claim a 40% interest, and none of the new businesses operated and most were never even formed. The firm in which Navia seeks to claim an interest, VMS Associates LLC, which does business as "Violy & Company," is never mentioned in the December 2008 agreement on which Navia relies in seeking arbitration.

Thus, there is no trace of an agreement to arbitrate the claims asserted, let alone the "clear and unequivocal" agreement required by law. It is axiomatic that "a party cannot be forced to arbitrate any dispute that it has not obligated itself, by contract, to submit to arbitration." *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 140 (2d Cir. 2007) (internal quotations omitted). Here, although the arbitration demand names McCausland, it seeks

1

recovery only against McCausland's business, VMS Associates LLC d/b/a/ Violy & Company, a non-party to the agreement. McCausland's existing business is nowhere mentioned in the chain of holding companies covered by the agreement, and Navia's mere assertion that the parties intended to cover a non-named, non-signatory entity does not make it so.

Although the absence of any agreement to arbitrate claims against McCausland's existing business is a sufficient basis on which to grant the Petition, there is another reason why Navia's attempt to compel arbitration must be stayed or enjoined. The dispute here is not merely a contract case. It is a case of fraud and breach of fiduciary duty by an attorney who is attempting to exploit his position of trust and confidence in furtherance of personal gain. In the arbitration, Navia misconstrues and distorts the agreement he made with his former client, McCausland. That agreement does not, as Navia suggests, grant Navia a 40% interest in McCausland's M&A business. Indeed, no rational person would ever have accepted the deal Navia suggests: an agreement under which McCausland hands him a 40% stake in the business she spent her life developing, in exchange for nothing.

In addition, the arbitration demand nowhere mentions that Navia – and the law firm in which he is a partner, Chadbourne & Parke LLP ("Chadbourne") – served as counsel to McCausland on several matters, including the same subject matter that forms the basis of Navia's demand. New York law is clear that attorneys seeking to enter into business relationships with clients must make a series of disclosures. Navia and Chadbourne made none of those disclosures. Navia never explained to McCausland his view that the agreement was conveying to him an interest in McCausland's existing business. To the contrary, Navia and Chadbourne had previously advised McCausland that her pre-existing business would remain

2

separate and apart from any new business structures they would recommend and create. Navia and Chadbourne did not disclose their conflict of interests, did not seek or obtain a conflict waiver, and did not explain the material terms of the agreement to their client, McCausland. Because Navia took advantage of his client in entering into the agreement, it is invalid and unenforceable as a matter of law. *See Greene v. Greene*, 56 N.Y.2d 86 (1982). The arbitration must be stayed or enjoined for this distinct reason.

Separate and apart from these reasons to stay or enjoin the arbitration, allowing it to proceed with Chadbourne as counsel would violate New York's ethical rules. Chadbourne must be disqualified from representing Navia and Core Value in the arbitration because that matter is "substantially related" to Chadbourne's prior representation of McCausland. It could not be clearer that the interests of Chadbourne's current clients (Core Value and Navia) are directly and materially adverse to those of its former client (McCausland). Chadbourne's participation in the arbitration directly violates its obligations under New York Rule of Professional Conduct 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.").

Accordingly, the arbitration should be permanently stayed and Chadbourne should be disqualified.

3

## FACTUAL BACKGROUND

I.      **McCausland Founded, Manages, And Owns 100% Of Violy & Co.**

Petitioner McCausland is recognized as one of the most innovative advisors on Wall Street focusing on Latin America. Over the course of her 30-year career, McCausland pioneered restructuring, mergers & acquisitions, and capital raising for Latin American companies, and has held prestigious leadership roles in the financial, advisory and deal-making sectors. *See* Affidavit of Violy McCausland-Seve dated April 18, 2011 ("McCausland Aff.") ¶¶ 8-10.

In 2003, McCausland founded VMS Associates LLC, an investment advisory firm that does business under the name Violy & Co. ("Violy & Co."). *Id.* ¶ 10; Affidavit of Thomas Masillo ("Masillo Aff.") ¶ 2. Since 2003, McCausland has run Violy & Co. as its sole owner and originator of business, leveraging her expertise in Ibero-American markets and experience serving Latin American companies. McCausland Aff. ¶¶ 10-11. Violy & Co. has been in operation since its founding, and has always operated under the formal name, VMS Associates LLC, a limited liability company with a sole owner, McCausland. *See* Masillo Aff. ¶¶ 6-8. Violy & Co. has never operated through any other entity. *See id.*

II.     **Navia and Chadbourne Were Legal Counsel To McCausland And Violy & Co. And Billed Her For Advice Relating To The Creation Of New Business Structures**

Since at least 2006, Chadbourne and Navia, the head of Chadbourne's Latin America and Private Equity practices, have served as legal counsel to both McCausland and Violy & Co. *See* McCausland Aff. ¶¶ 12-15; Affirmation of Mark Kook, Esq. ("Kook Aff."), Ex. B (bills for legal services provided by Chadbourne). Chadbourne has represented McCausland and her business in a wide range of matters, including employment issues, litigation, business formation, and estate planning. *See* McCausland Aff. ¶¶ 12-17; Kook Aff., Ex. B.

4

In 2007, Navia and Chadbourne were advising McCausland on the creation of a complex series of personal trusts for McCausland and a new set of business structures through which she could more efficiently conduct business. *See* McCausland Aff. ¶¶ 18-19; Kook Aff., Ex. B. The thousands of dollars worth of bills for legal services that Chadbourne sent to McCausland contain dozens of entries for Chadbourne's work on structuring the new business entities, including numerous hours billed for research, meetings and conference calls, and planning work. *See* Kook Aff., Ex. B. Indeed, Navia himself billed numerous hours to McCausland in 2007 for his work on this complicated structure of new businesses. *See* Kook Aff., Ex. B.

A significant portion of Chadbourne's efforts, for which they billed McCausland, was spent in preparing a chart that depicts the complex structure of the new business venture. *See* Kook Aff., Ex. B. This chart identifies dozens of new entities and diversified businesses to be formed, including a "Violy Private Equity Fund (Canadian LP)"; an "Incubator LLC (Sweat Equity)"; a "Wealth Management LLC"; a "New M&A Advisory LLC"; and a "Broker Dealer LLC." *See* McCausland Aff. ¶ 19 and Ex. A to McCausland Aff. Significantly, the chart nowhere lists the existing M&A business, Violy & Co., within the inter-locking chain of holding companies, trusts, and businesses that comprise the new structure proposed by Chadbourne. *See* McCausland Aff., Ex. A. To the contrary, the chart specifically excludes Violy & Co., which is boxed-off in the lower left corner and designated as an independent, stand-alone company. *Id.* Indeed, Chadbourne's chart represents that McCausland's "Existing Entity (stays)" and that it will remain "100%" owned by "Violy" alone. *Id.*

### III.   Navia and McCausland Discussed The New Business Venture

In the course of Chadbourne's work on this new business structure, McCausland and Navia began discussing the idea that Navia himself could serve as McCausland's partner in this new venture. *See* McCausland Aff. ¶¶ 20-21. As Navia explained it, Navia could create new streams of income under the new business structure proposed by Chadbourne, including private equity and venture capital work that would supplement, and be separate from, McCausland's mergers and acquisitions work. *See id.* ¶¶ 21, 25. These discussions did not contemplate that McCausland would bring Navia into her existing business as an owner; to the contrary, Navia expressly told McCausland that he did not want an equity or ownership interest in Violy & Co. *See id.* ¶ 25.

### IV.   The Violy Group LLC Agreement

McCausland relied on Navia to draft a written agreement that would formalize the arrangement they were contemplating consistent with Navia's and Chadbourne's representation on the chart that Violy & Co. would remain unaffected. *See* McCausland Aff. ¶¶ 27-28, Ex. A. The agreement – titled Limited Liability Company Agreement of Violy Group LLC (the "LLC Agreement" or "the Agreement") – was intended to create a new entity, "Violy Group LLC." Violy Group LLC would act as the "managing member" of Violy Holdings, LLC, a Delaware limited liability company, which, in turn, would "(A) own all of the equity of VMS LLC and (B) create and own a multi-company platform including, without limitation, a new M&A advisory firm, broker-dealer, wealth management firm and private equity firm and such other companies as may be mutually agreed upon."[1] *See* Kook Aff., Ex. A (LLC Agreement), § 2.03(a). The

---

[1] A company called "Violy Holdings LLC" has never existed, according to the database for the Delaware Department of Corporations. *See* Kook Aff. ¶ 6, Ex. E. "VMS, LLC" had been created in Delaware, but ceased

LLC Agreement provided that McCausland would own 60% of the newly formed Violy Group LLC and Navia, through Core Value, would own 40% of the new entity. *See id.*, Schedule I.

### A.    Wachtell Provided Additional Advice To McCausland On The LLC Agreement

Over a period of many years, through various business dealings, McCausland had developed a close relationship with attorneys at Wachtell, Lipton, Rose & Katz LLP ("Wachtell"). *See* McCausland Aff. ¶¶ 29. In early 2008, McCausland asked Wachtell to review several drafts of the LLC Agreement. *See id.* ¶ 29. Attorneys at Chadbourne and Wachtell exchanged drafts of the LLC Agreement during the first few months of 2008; both firms were engaged by McCausland to review this agreement on her behalf. *See* McCausland Aff. ¶¶ 30-31; Affidavit of Josh Holmes ("Holmes Aff.") ¶¶ 16-18. McCausland was not involved in the exchange of drafts between Chadbourne and Wachtell, but was relying on them to represent her interests as her attorneys. *See* McCausland Aff. ¶¶ 30-31. Indeed, Chadbourne billed McCausland for its work on the LLC Agreement, including billing her for calls with Wachtell and for their work in forming the new entities contemplated under the LLC Agreement. *See* Kook Aff., Ex. B.

Chadbourne never obtained McCausland's consent to act adversely to her interests in any circumstances, including with respect to creating new business structures, nor did it inform McCausland of the inherent conflict of interest created by her entering into a complex business arrangement with one of her lawyers and a Chadbourne partner, Navia. *See* McCausland Aff. ¶¶ 37-44.

---

good standing before the LLC Agreement was drafted. *See id.* ¶ 5, Ex. D. McCausland never conducted business through an entity under the name Violy Group LLC or VMS, LLC. *See* McCausland Aff. ¶ 49.

### B.    Work On The LLC Agreement Ceased In May 2008

In the course of reviewing drafts of the LLC Agreement on behalf of McCausland, Wachtell identified a particular provision that it repeatedly deleted from the drafts exchanged with Chadbourne. This provision purported to make the new company contemplated by the LLC Agreement, *i.e.*, Violy Group, the "exclusive vehicle" for Navia and Violy "as it relates to the businesses engaged in by" Violy Group, including "any direct or indirect subsidiary or Affiliate." *See* Kook Aff., Ex. A (LLC Agreement), § 4.04. In each of the drafts on which Wachtell attorneys provided comments, they deleted this exclusivity provision. *See* Holmes Aff. ¶¶ 15-18. Presumably, Navia intended this provision to mean that McCausland could only do business through the new entity being created under the LLC Agreement, even though she never agreed to any such thing. Wachtell never accepted this provision and repeatedly deleted it from the drafts it received from Chadbourne. *See* Holmes Aff. ¶¶ 15-18.

The exchange of drafts broke off in May 2008 because Navia advised McCausland that he did not like Wachtell's independent input into the LLC Agreement or its changes to Chadbourne's drafts. *See* McCausland Aff. ¶ 36. Indeed, Navia reinserted the exclusivity provision into a version of the agreement that he claimed to be final, but Navia never informed McCausland that he had re-inserted this provision into the agreement (or that her lawyers at Wachtell had recommended that it be taken out). *See* McCausland Aff. ¶¶ 38-43. Navia did not attempt to execute the agreement in May 2008 when drafting ceased.

### C.    The LLC Agreement Was Not Signed Until December 2008

Almost a year after the initial draft of the agreement was first circulated to Wachtell, the LLC Agreement had still not been executed.  Indeed, no organizational papers had ever been filed to create the central holding company contemplated under the Agreement, "Violy Holdings." *See* Kook Aff. ¶¶ 4-6.[2]  Meanwhile, Navia and Chadbourne continued to act as legal counsel to McCausland and Violy & Co. in connection with various matters. *See* McCausland Aff. ¶ 30, Kook Aff., Ex. B.   It was not until December 2008, more than six months after Wachtell was taken out of the picture by Navia, that Navia determined to execute the LLC Agreement. *See* McCausland Aff. ¶ 34.  By that point, Navia had isolated McCausland from the independent advice of outside counsel, and the parties signed a version of the LLC Agreement that contained the very exclusivity provision that Wachtell repeatedly had taken out on McCausland's behalf.  Specifically, Navia did not explain that he had reinserted the exclusivity provision that Wachtell had repeatedly removed. *Id.* ¶¶ 37-40, 43.   Navia did not advise her at that time that she should consult with independent counsel and he did not explain to her the inherent conflict of interest created when an attorney and a client enter a business transaction, especially one in which that attorney and his firm previously had advised the client. *Id.* ¶¶ 37-43.  Navia did not explain the material terms of the LLC Agreement to McCausland, and he did not discuss with her the fairness of the Agreement.   In short, at no point did Navia, McCausland's counsel, ensure that McCausland fully understood the consequences of signing this Agreement, nor did he advise McCausland that he would claim that under the Agreement she was conveying to him 40% of her existing Violy & Co. business. *See id.* ¶¶ 37-44.

---

[2] The Delaware Department of Corporations, as of October 2010, did not have a "Violy Holdings LLC" as an existing entity. *See* Kook Aff. ¶ 6.

**D.    No Business Was Ever Conducted Under The LLC Agreement**

No business was ever carried out through the Violy Group company contemplated by the LLC Agreement, or through any of the various entities Violy Group was intended to own. Indeed, the only purpose of Violy Group was to serve as "managing member" of Violy Holdings LLC, *see* Kook Aff., Ex. A, § 2.03(a), but that entity was never even created, *see id.* ¶¶ 4-6. Because Violy Holdings was never formed, no stock, income or assets of any companies through which any business could have been conducted was ever transferred, or could ever have been transferred, to Violy Holdings (directly) or to Violy Group (indirectly). Even if Violy Holdings had been created, which it was not, it could not have owned anything because none of the various entities which Violy Holdings was intended to own, including VMS, LLC, was ever created.[3] *See id.*

**V.    The Arbitration Demand**

In the arbitration demand, Navia's assertions are all stated against Violy & Co., rather than any of the entities actually named in the LLC Agreement under which the arbitration is brought. He claims: (1) that Core Value owns 40% of Violy & Co. based on the Violy Group LLC Agreement; (2) Core Value as a member of Violy Group is entitled to an accounting of the affairs of Violy & Co.; (3) breach of an oral contract that Core Value is entitled to fees from Violy & Co., even though no such fees are set out in the LLC Agreement; and (4) that the Violy Group LLC Agreement entitles Core Value to damages for the "substantial profits" realized by Violy & Co. in connection with its ongoing business. *See* Arbitration Demand ¶¶ 40-50.

---

[3] Indeed, "VMS, LLC" is the name of an entity which was created in 2003, but ceased good standing as of 2006, two years before the Agreement was signed. Kook Aff. ¶ 5, Ex. D.

Thus, Navia avoids the true and stated purpose and scope of the LLC Agreement. Instead, the demand is merely a bad faith attempt to claim ownership and profits from McCausland's Violy & Co. business to which he is not entitled. The arbitration should not proceed.

## ARGUMENT

This Court should permanently stay or enjoin the arbitration brought by Navia. First, there is no clear and unequivocal intent to arbitrate any of the claims in the arbitration demand. Second, Navia is seeking to enforce a contract that is unenforceable under New York law because he obtained that contract by deceiving his client, McCausland, and by exploiting his fiduciary position as her attorney. Finally, Chadbourne must be disqualified from representing Navia and Core Value in the arbitration because Chadbourne is in breach of its ethical obligations to its former client, McCausland.

**I.     The Arbitration Must Be Stayed Because There Is No Unequivocal Intent To Arbitrate Any Of The Claims Asserted In Arbitration.**

This Court should permanently stay or enjoin the arbitration because the parties to the underlying contract never agreed to arbitrate the claims asserted by Navia and Core Value. The parties seeking to compel arbitration bear the burden of establishing that a contract's arbitration provision clearly covers the subject matter of the arbitration demand. Navia and Core Value cannot meet that burden.

The rules governing arbitrability of claims under New York law are clearly established. First, "[i]t is well settled that a court will not order a party to submit to arbitration absent evidence of that party's unequivocal intent to arbitrate the relevant dispute and unless the dispute falls clearly within the class of claims which the parties agreed to refer to arbitration."

11

*Primavera Labs., Inc. v. Avon Prods, Inc.*, 297 A.D.2d 505, 505-06 (1st Dep't 2002) (internal quotation marks and citations omitted). Second, it is equally clear that the party seeking arbitration bears the burden to demonstrate such a "clear and unequivocal agreement" to arbitrate the claim. *See Gerling Global Reinsurance Corp. v. Home Ins. Co.*, 302 A.D.2d 118, 123 (1st Dep't 2002) (internal quotation marks omitted). Where the party demanding arbitration fails to meet that burden, the court may and should stay or enjoin the arbitration. *See In re Farm Family Casualty Ins. Co. (Trapani)*, 301 A.D.2d 740, 741 (3d Dep't 2003) ("Courts may stay arbitration where the particular claim sought to be arbitrated is outside the scope of the agreement to arbitrate.") (citing CLPR 7503) (internal quotation marks omitted).

Navia and Core Value cannot satisfy their burden to show an agreement to arbitrate the asserted claims. The LLC Agreement's arbitration provision provides for arbitration of matters "arising out of or under the terms and conditions of this Agreement or the operation or management of the Company . . . ." *See* LLC Agreement § 9.01. The Agreement defines "the Company" as Violy Group LLC, and indeed, the only entities covered by the LLC Agreement are Violy Group, Violy Holdings, and VMS, LLC. *Id.*, Ex. A.

Despite the confinement of the Agreement to the entities expressly identified therein, the arbitration seeks to assert claims against an entity, Violy & Co., that is neither named in the LLC Agreement – except in a schedule listing addresses for McCausland – nor covered by the Agreement's terms. The actual claims in the arbitration demand are:

- The arbitration demand's first claim seeks a declaration that the LLC Agreement gives Core Value a 40% interest in Violy & Co. *See* Arbitration Demand, First Claim.

- The arbitration demand's second claim seeks access to the books and records of Violy & Co. *See* Arbitration Demand, Second Claim.

12

- The arbitration demand's third claim seeks management fees for Core Value's advice to Violy & Co. *See* Arbitration Demand, Third Claim.

- The arbitration demand also seeks fees earned by Violy & Co. *See* Arbitration Demand, Fourth Claim.

Yet, none of these claims relates to the new managing entity contemplated by the Agreement (Violy Group LLC), to the holding company (Violy Holdings), or to the entities that the holding company was to possess (VMS, LLC and other, to-be-established, new entities); by its terms Violy & Co. is simply not covered by the Agreement.

Indeed, Violy & Co. has always done business exclusively under the legal entity, VMS Associates LLC, of which McCausland is and has always been the sole owner. *See* McCausland Aff. ¶ 10; Masillo Aff. ¶¶ 5-7. Further, Violy & Co. was listed as a separate and distinct entity on the chart prepared by Chadbourne for Violy in connection with the creation of new entities. *See* McCausland Aff., Ex. A. Thus, Navia's assertion that Violy & Co. is encompassed by the LLC Agreement is contradicted by its plain, unambiguous terms and by the facts. Finally, to the extent there is any ambiguity about what entities the LLC Agreement encompasses -- which there is not -- the law requires that the ambiguity be construed in favor of McCausland and against Navia, her attorney. *See Schlanger v. Flaton*, 218 A.D.2d 597, 601-02 (1st Dep't 1995) ("The law requires that an agreement between an attorney and client be construed most favorably for the client.").

Under these circumstances, there simply is no "clear and unequivocal" intent to arbitrate disputes relating to Violy & Co., which fall *outside* of the claims Navia references in his arbitration demand. *Primavera Labs.*, 297 A.D.2d at 505-06; *FCI Group, Inc. v. City of New York*, 54 A.D.3d 171, 175 (1st Dep't 2008) (The "subject contract applies only to specified

13

disputes; thus, it is narrow, not a broad ADR provision"); *Matter of Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. (GE Betz, Inc.)*, 13 A.D.3d 122 (1st Dep't 2004). Thus, the demand for arbitration does not allege any claims relating to a "matter arising out of or under the terms and conditions of this Agreement," or over "the operation or management of the Company," Violy Group. *See* LLC Agreement § 9.01 The motion to permanently stay or enjoin the arbitration should be granted on this basis alone.

## II.   The Arbitration Must Be Stayed Because It Involves An Unenforceable And Invalid Agreement Between An Attorney And His Client And Is Thus Not Arbitrable.

Not only are Navia's claims not arbitrable under the LLC Agreement, the claims are also subject to a permanent stay or injunction on a separate, independent basis: the LLC Agreement is invalid and unenforceable. Navia is seeking to enforce an agreement signed with his client that, under Navia's skewed and self-serving interpretation, is completely one-sided to Navia's advantage. Navia obtained that Agreement by deceiving McCausland and by exploiting his fiduciary position as McCausland's attorney. Because Navia has violated his legal and ethical obligations to McCausland, the LLC Agreement is invalid and unenforceable and the arbitration should be permanently stayed or enjoined. *In re Castle Oil Corp.*, No. 7812/09, 2009 WL 2242669, at *7 (Sup. Ct. N.Y. County July 24, 2009) ("It is axiomatic that an agreement which is otherwise void and unenforceable is not enforceable in arbitration.") (internal quotation marks omitted).

### A.   The Invalidity of the LLC Agreement Is A Matter For Judicial, Not Arbitral, Decision.

The invalidity of the LLC Agreement is squarely a matter for judicial, not arbitral, determination, as it implicates significant New York policies relating to attorney conduct and discipline. *See Hirsch v. Hirsch*, 37 N.Y.2d 312, 315 (1975) ("Thus, it has often been held that

14

the broadest of arbitration agreements cannot oust our courts from their role in the enforcement of major State policies, especially those embodied in statutory form.") (internal quotation marks omitted). Indeed, matters involving violations of the Disciplinary Rules are regularly considered a matter for courts, rather than arbitrators. *See Bidermann Indus. Licensing Inc. v. Avmal N.V.,* 173 A.D.2d 401, 402 (1st Dep't 1991) ("matters of attorney discipline are beyond the jurisdiction of arbitrators"); *Matter of Silverberg (Schwartz)*, 75 A.D.2d 817, 819 (2d Dep't 1998) ("[P]ublic policy requires that violations of the rules of professional conduct not be subject to negotiation and arbitration, but that such violations come before the scrutiny of the courts."); *Matter of Silagi (Guazzo, Perelson, Rushfield & Guazzo, P.C.)*, 146 A.D.2d 555, 556 (1st Dep't 1989) (staying arbitration for hearing upon issue of whether law firm partnership agreement provision that violated a Disciplinary Rule was in fact the subject of the arbitration, thereby invoking "public policy barring arbitration of the claims and counterclaims"). No arbitral panel has jurisdiction to hear Navia's claims to enforce an agreement procured in violation of his professional and ethical obligations.

### B.   Navia Violated New York Disciplinary Rule 5-104 in Executing the LLC Agreement.

The LLC Agreement was procured by Navia and Chadbourne in clear violation of Disciplinary Rule 5-104 governing attorney-client business transactions.[4]  Under that rule, "[a] lawyer shall not enter into a business transaction with a client if they have differing interests

---

[4] On April 1 2009, the Appellate Division of the New York State Supreme Court adopted the New York Rules of Professional Conduct, which replaced the New York Lawyer's Code of Professional Responsibility, including the Disciplinary Rules. Because the attorney-client transaction at issue here occurred in 2008, Petitioner cites to the rules then effective. Although there are some changes in the language of the new rule governing attorney-client business transactions, Rule 1.8(a), it is substantially similar to DR 5-104 and its differences do not affect the arguments asserted in this Memorandum. Indeed, the new rule is stronger even than DR 5-104 in that it requires, *inter alia*, that a lawyer advise the client "*in writing* of the desirability of seeking . . . independent legal counsel on the transaction" and to give the client "a reasonable opportunity to seek" such counsel. Rules of Professional Conduct [22 NYCRR 1200] Rule 1.8(a)(2) (emphasis added).

therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless:

1. The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;

2. The lawyer advises the client to seek the advice of independent counsel in the transaction; and

3. The client consents in writing, after full disclosure, to the terms of the transaction and to the lawyer's inherent conflict of interest in the transaction.

Disciplinary Rule 5-104.

Here the LLC Agreement, including any agreement to arbitrate, was procured in violation of Disciplinary Rule 5-104.

First, Navia and McCausland had differing interests in the transaction at issue. When the LLC Agreement was signed, McCausland expected that a new company and new businesses were being structured in which Navia and McCausland would each be owners. Navia, however, had a very different plan, concealed from McCausland, of what he could gain by entering into the LLC Agreement. Navia's construction of the Agreement seeks to force McCausland to forfeit to him a substantial interest in her solely-owned business, Violy & Co., in exchange for nothing. The very fact of this dispute demonstrates the adversity of the parties' interests. *See Schlanger*, 218 A.D.2d at 603 ("Certainly, the divergence in interests between [the parties] is demonstrated, if by nothing else, by the fact that the parties are now embroiled in this litigation.").

Second, McCausland expected that, throughout the transaction, Navia would act in her best interest, as her attorney and fiduciary. *See* McCausland Aff. ¶ 30. For several months

Navia was billing Violy as her attorney for work on the structure of the new business venture, *see* Kook Aff., Ex. B, and McCausland was never informed that Chadbourne or Navia could take actions adverse to her interests. *See* McCausland Aff. ¶¶ 30, 38-44. Indeed, Chadbourne and Navia continued to represent McCausland in connection with the creation of the new business venture (along with other matters) and McCausland continued to view them as her attorneys. *See id.* ¶ 30; Kook Aff., Ex. B. Clearly, McCausland expected her attorneys to exercise their judgment for her protection.

Third, Navia's attempt to use the LLC Agreement for his own gain is neither fair nor reasonable to the client, McCausland. Any agreement that purports to give a 40% ownership interest in one party's business to another without any consideration is unreasonable on its face. But such an agreement is even more unfair when: (i) the party obtaining the interest is an attorney who exploits his position of trust to make such a claim; (ii) the actual terms and conditions of the agreement do not mention transfer of ownership of Violy & Co.; and (iii) the attorney represented in writing that ownership of Violy & Co. would remain "100%" with "Violy." *See* McCausland Aff. ¶ 19, Ex A.

Fourth, not only did Navia fail to advise McCausland to seek the advice of independent counsel before signing the Agreement, he took affirmative steps to preclude review by other counsel. Navia isolated McCausland from independent counsel before the execution of the LLC Agreement. *See* McCausland Aff. ¶¶ 34-37. He complained about the input from other counsel. McCausland Aff. ¶¶ 36-37. He did not seek McCausland's signature until after independent counsel was out of the picture and after he reinserted an unfavorable provision that independent counsel repeatedly had stricken. McCausland Aff. ¶ 43; Holmes Aff. ¶ 20. In short, Navia used

17

his position of trust and confidence as McCausland's attorney to induce her to sign the agreement without the advice and protection of independent counsel.

Finally, Navia and Chadbourne never informed McCausland of the inherent conflict of interest created when they were simultaneously working as her lawyers and billing for their time on the one hand, while preparing an agreement that, Navia now claims, caused her to forfeit 40% of the business she spent her career building on the other. Navia and Chadbourne certainly never obtained McCausland's consent to the conflict of interest (after full disclosure of the terms), not orally and not in writing as New York law requires.[5]  *See* McCausland Aff. ¶¶ 38-43.

For these reasons, Navia and Chadbourne plainly violated Disciplinary Rule 5-104 with respect to the transaction at issue here, the LLC Agreement.

### C.  The LLC Agreement Is Invalid And Unenforceable Under Longstanding New York Law.

Because Navia and Chadbourne breached their ethical obligations to McCausland under Disciplinary Rule 5-104, the LLC Agreement is invalid and unenforceable under New York law. New York courts have consistently barred enforcement of agreements obtained in violation of an attorney's ethical duties to his client.

Thus, in *Greene v. Greene*, 56 N.Y.2d 86 (1982), the court held that it would not enforce a contract between an attorney and client, where the attorney -- like Navia -- could not establish that the client had been fully informed. The court ruled that for an attorney to "avail himself of a contract made with his client," he must "establish affirmatively" that the contract was "made by the client with full knowledge of all the material circumstances known to the attorney," that it was "in every respect free from fraud on his part, or misconception on the part of the client," and

---

[5] Both DR 5-104 and Rule 1.8 require(d) that the client give informed consent in writing. *Compare* Rule 1.8(a)(3) *with* DR 5-104(A)(3).

18

that "a reasonable use was made by the attorney of the confidence reposed in him." *Greene*, 56 N.Y.2d at 92 (quoting *Whitehead v. Kennedy*, 69 N.Y. 462 (1877)); *see also Schlanger*, 218 A.D.2d at 296 (same).  If an attorney is unable to make these showings, the agreement is invalid, and the attorney cannot enforce it against the client.  *See Greene*, 56 N.Y.2d at 92-93.

Navia cannot possibly make any of these showings.  Navia failed to explain to McCausland that he understood the LLC Agreement to encompass her existing business, Violy & Co., rather than new business structures on which he and Chadbourne had been advising her for months.  Indeed, McCausland could never have understood the LLC Agreement to have such one-sided and unfair consequences, because the LLC Agreement does not provide for any ownership interest in Violy & Co., or any monthly salary from, or a percentage of fees earned by, Violy & Co.  *Selby v. Stewart*, 19 Misc.3d 310, 318 (Sup. Ct. Kings County 2008) ("Allegations by the client . . . that he did not understand the terms or the effect of the agreement are sufficient" unless attorney can prove that "client was fully and fairly informed of the consequences of the agreement and the special advantages it gave to him.") (citations and quotations omitted).  By inducing McCausland to sign the Agreement, Navia took advantage of the "confidence reposed in him" by exploiting his client to his own advantage.[6]  In these circumstances, the LLC Agreement is invalid and unenforceable, and Navia should not be permitted to proceed with the arbitration.

---

[6] Even if there were not outright fraud in this case, the agreement would nonetheless be invalid if Navia "'got the better of the bargain,' unless he can show that the client was fully aware of the consequences and that there was no exploitation of the client's confidence in the attorney." *Greene*, 56 N.Y.2d at 92.

III.    In The Event The Arbitration Proceeds, Chadbourne Must Be Disqualified As
        Navia's Counsel Due To An Incurable Conflict Of Interest.

Adding insult to injury, and creating an incurable conflict of interest, Navia's lawyers in

the arbitration are his partners at Chadbourne – *i.e.*, McCausland's former attorneys.  Under New

York law and the New York Rules of Professional Conduct, the firm must be disqualified.

    A.    Chadbourne Seeks To Represent Navia In The Same Matter In Which It
          Represented McCausland And In Which Navia And McCausland Are
          Directly And Materially Adverse.

As discussed above, the central issue in the arbitration demand is whether Violy & Co.,

McCausland's preexisting M&A business, is "at the core" of, or in any way related to, Violy

Group LLC, or whether it remained a distinct and separate entity owned exclusively by

McCausland.  *See* Arbitration Demand ¶ 11 ("The partners envisioned that Violy Group would

become their exclusive vehicle for developing a multi-company platform.  The existing Violy &

Co. business would be at the core of the new entity . . . .").  Because Chadbourne previously

advised McCausland on the structure of Violy Group, Chadbourne cannot now change course

and represent McCausland's opponent in an adversarial proceeding against her that is based on

the subject of Chadbourne's own work and advice.

New York law creates an irrebuttable presumption of disqualification where a party is

able to demonstrate:  (1) the existence of a prior attorney-client relationship, (2) that the matters

involved in the former and current representations are substantially related, and (3) that the

interests of the former and current clients are materially adverse.  *See Tekni-Plex, Inc. v. Meyner

and Landis,* 89 N.Y.2d 123, 132, 136 (1996) (affirming disqualification of law firm where all

prongs of test were met and where "appearance of impropriety is manifest and the potential

conflict of interest apparent"); *see also* Rules of Professional Conduct, [22 NYCRR 1200] rules

20

1.9 and 1.10.[7]  Here, all three elements for disqualification are met, and Chadbourne's failure to abide by its ethical obligations require that it be disqualified from representing Core Value against Chadbourne's former client, McCausland.

First, it is indisputable that the attorneys at Chadbourne are McCausland's former lawyers.  From as early as 2006 until the middle of 2010, Chadbourne provided counsel to McCausland and several of her companies on a vast array of personal and corporate matters.  Their representation of Violy included counseling on corporate governance and related matters, trusts and estates work, advising as to corporate structures, and representation in litigation.  *See* McCausland Aff. ¶¶ 12-19; Kook Aff., Ex. B.  Indeed, Chadbourne has asserted its representation of Violy and her various businesses in a suit to recover fees.  *Chadbourne & Parke LLP v. McCausland, et al.*, Index No. 103833.  There is no dispute here of a "prior attorney-client relationship." *Tekni-Plex*, 89 N.Y.2d at 136.

Second, the matter on which Chadbourne is now representing Core Value in arbitration is "substantially related" to a matter on which Chadbourne previously provided counsel to McCausland.  Indeed, they are the same matter.  Chadbourne is representing Core Value in an arbitration in which Core Value claims that the LLC Agreement encompasses not only the entities named in it, but also includes McCausland's existing advisory business.  Beginning in early 2007, Chadbourne counseled McCausland about, *inter alia,* how to structure a new business venture; Chadbourne advised McCausland on the very Agreement at issue here.  *See*

---

[7] Rule 1.9 prohibits attorneys for former clients "in a matter" from representing a person "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Rule 1.10 extends the prohibition in Rule 1.9 to all "lawyers . . . associated in a firm" where any lawyer in the firm "practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9 . . . ." McCausland was never asked for, nor did she offer, her consent to Chadbourne's representation of Navia.

Kook Aff., Ex. B;  McCausland Aff. ¶¶ 18-19, 30-31; Arbitration Demand ¶¶ 14-15.  Thus, the

matters involved in the "former and current representations" are not "substantially related," they

are the same.

Finally, there is no question that Chadbourne's former and current clients, McCausland

and Core Value, are directly and materially adverse in the arbitration styled as *Core Value*

*Partners (Latin America) LLC v. Violy McCausland*.  These parties were on opposite sides of the

Agreement and one of those parties has now sued the other to claim that the Agreement is far

broader than its actual language.[8]  Because McCausland has shown that (1) she was previously

represented by Chadbourne; (2) in a matter substantially related to the present arbitration; and (3)

the interests of Core Value and McCausland in the same matter are adverse, Chadbourne is

presumptively disqualified.

### B.   Permitting Chadbourne To Represent Navia Against Its Former Client, McCausland, Would Result In A Further Breach Of The Duty Of Confidentiality Owed To McCausland.

In addition, Chadbourne's disqualification is necessary to prevent a violation of the

firm's duty of confidentiality to McCausland.[9]  In the course of representing McCausland with

respect to the creation of new business structures, including the LLC Agreement, Chadbourne

was entrusted with confidences of its client, including confidential information about her

finances and the operation of her businesses.  Absent disqualification, Chadbourne is likely to

---

[8] Navia also seeks $520,000 in fees and "damages" estimated at $6 to $7.2 million.  *See* Arbitration Demand ¶¶ 38, 46, 48.  In addition to the arbitration, Navia and his trust have sued McCausland in New York Supreme Court on the basis of loans he and the trust made to McCausland, her husband, and their company Violy & Co.

[9] For purposes of this motion, the law requires only that "there is a reasonable probability of disclosure of confidential information obtained as a result of the prior representation." *See Caravousanos v. Kings Co. Hosp.*, 27 Misc.3d 237, 243 (Sup. Ct. Kings Co. 2010) (citing *NYK Line N. Am. v. Mitsubishi Bank, Ltd.*, 171 A.D.2d 486, 488 (1st Dep't 1991)).  "It is not essential, however, that the prior client establish that confidential information will necessarily be disclosed in the course of the litigation." *Id.*

rely on those confidences in attempting to make its case against McCausland. Indeed, the arbitration demand itself is filled with allegations (which McCausland disputes) that seem to have been derived from McCausland's confidential communications with Chadbourne as counsel. *See, e.g.,* Arbitration Demand ¶¶ 5 (claiming McCausland told Navia she "hoped and expected that Core Value and Navia would provide the management skills and intellectual capital she badly needed"); 7 (asserting McCausland was "de facto insolvent"); 9 (referring to personal finances); and 30 (describing Violy & Co.'s expenses and McCausland's "personal cash needs"). Even the mere *possibility* of revealing confidences is grounds for disqualification. *Tekni-Plex*, 89 N.Y.2d at 131 ("Th[e] rule of disqualification fully protects a client's secrets and confidences by preventing even the possibility that they will subsequently be used against the client in related litigation."). Here, it is virtually certain that Chadbourne will attempt to use confidential information in the arbitration, and their disqualification is required *a fortiori*.

## CONCLUSION

Based on the foregoing, Petitioner respectfully submits that her Petition should be granted in all respects, and (i) the arbitration should be stayed permanently, and (ii) Chadbourne should be disqualified.

Dated: New York, New York
April 20, 2011

JENNER & BLOCK LLP

By: _____
Andrew Weissmann
Katya Jestin
919 Third Avenue, 37th Floor
New York, New York 10022
(212) 891-1600

SOLOMON BLUM HEYMANN LLP
Mark R. Kook
40 Wall Street, 35th Floor
New York, New York 10005
(212) 267-7600

Attorneys for Petitioner

FILED: NEW YORK COUNTY CLERK 04/21/2011

NYSCEF DOC. NO. 18

INDEX NO. 651052/2011

RECEIVED NYSCEF: 04/21/2011

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

------------------------------------------------------------X

VIOLY McCAUSLAND-SEVE,

                   Plaintiff/Petitioner,

           - against -

CORE VALUE PARTNERS (LATIN AMERICA) LLC,

                Defendant/Respondent.

------------------------------------------------------------X

Index No. 651052/2011

STATEMENT IN SUPPORT OF
REQUEST FOR ASSIGNMENT
TO COMMERCIAL DIVISION

     Andrew Weissmann _____, counsel for Violy McCausland-Seve _____ , the
Petitioner _____ in this matter, submits this Statement and the accompanying copy
of the pleadings, pursuant to Section 202.70 (d) (2) of the Uniform Rules for the Trial Courts, in support of
the request of said party for the assignment of this matter to the Commercial Division of this court.

     (1) I have reviewed the standards for assignment of cases to the Commercial Division set forth in
Section 202.70. This case meets those standards. I therefore request that this case be assigned to the Division.

     (2) The sums at issue in this case (exclusive of punitive damages, interest, costs, disbursements, and
counsel fees claimed) are equal to or in excess of the monetary threshold of the Division in this county as set
out in Subdivision (a) of said Section, or equitable or declaratory relief is sought, in that _____
Petitioner seeks a stay of arbitration under CPLR 7503.
_____
_____
_____

     (3) This case falls within the standards set out in Subdivision (b) of the Section and does not come
within the groups of cases set out in Subdivision (c) that will not be heard in the Division, in that _____
Petitioner seeks to stay an arbitration (202.70(b)(12))
_____
_____
_____

Dated: 4/21/2011 _____

_____ (Signature)
Andrew Weissmann _____ , Esq.

Jenner & Block LLP _____ (Firm)
919 Third Avenue _____ (Address)
New York, NY 10022 _____
212-891-1600 _____ (Phone)
212-891-1699 _____ (Fax)
AWeissmann@jenner.com _____ (E-Mail)

FILED: NEW YORK COUNTY CLERK 04/21/2011
NYSCEF DOC. NO. 19

INDEX NO. 651052/2011
RECEIVED NYSCEF: 04/21/2011

STATE OF NEW YORK      )
                        )   s.s.:
COUNTY OF NEW YORK   )

### AFFIDAVIT OF SERVICE

I, Na'eem A. Conway, being over the age of eighteen (18) years, and not a party to this action, and being duly sworn, state on oath that on April 20, 2011, I served the Notice of Petition, including attached affidavits and exhibits, the Petition, and the Memorandum of Law in Support thereof in Index No. 651052/2011 (New York County Supreme Court), upon the following party by hand delivery at the offices of Chadbourne and Parke LLP, 30 Rockefeller Plaza, New York, NY 10112: Peter Edward, male, brown skin, approximately 50-55 years old, approximately 5'7", 170 lbs. Mr. Edward stated that he was authorized to accept service.

Subscribed and sworn to me this
20th day of April, 2011

_____
Notary Public

MARK R. SCHOLL
NOTARY PUBLIC, State of New York
No. 01SC6069204
Qualified in New York County
Commission Expires August 27, 2013

# State Court Proceedings Filed by Respondent Herein on April 25, 2011, Submitted Herewith Pursuant to 28 U.S.C. § 1447(b)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

Application of VIOLY MCCAUSLAND-SEVE,

                                        Petitioner,

For an Order Pursuant to Article 75 of the CPLR to
Stay the Arbitration of a Certain Controversy

                        -against-

CORE VALUE PARTNERS (LATIN AMERICA),
LLC,

                                        Respondent.

Index No. 651052/2011

**NOTICE OF APPEARANCE**

---

        PLEASE TAKE NOTICE that Chadbourne & Parke LLP hereby appears in

the above-captioned proceeding as attorneys for Respondent Core Value Partners

(Latin America) LLC, and hereby requests that all pleadings and papers herein be

served upon the undersigned at the office and address set forth below.

Dated:   New York, New York
         April 25, 2011

                        CHADBOURNE & PARKE LLP

                        By _____
                                Thomas E. Butler
                                A Member of the Firm
                        Attorneys for Respondent
                        30 Rockefeller Plaza
                        New York, NY  10112
                        (212) 408-5100
                        tbutler@chadbourne.com

TO:    Andrew Weissman, Esq.
        Katya Jestin, Esq.
        Jenner & Block LLP
        919 Third Avenue, 37th Floor
        New York, NY 10022

        Mark R. Kook, Esq.
        Solomon Blum Heymann LLP
        40 Wall Street, 35th Floor
        New York, NY 10005

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Application of VIOLY MCCAUSLAND-SEVE,

                                Petitioner,

For an Order Pursuant to Article 75 of the CPLR to
Stay the Arbitration of a Certain Controversy

                -against-

CORE VALUE PARTNERS (LATIN AMERICA),
LLC,

                           Respondent.

Index No. 651052/2011

**CONSENT TO E-FILING**

      I, Thomas E. Butler, am an attorney in good standing representing Core Value

Partners (Latin America) LLC, respondent in the above-captioned proceeding, and

hereby consent to the use of the New York State Courts Electronic Filing System

("**NYSECF**") in this case.  I agree to be bound by the regulations governing the

**NYSECF** System (22 NYCRR §§ 202.5-b, 206.5, 206.5-aa, 207.4-a) and the

procedures of the **NYSECF** System as reflected in the *User's Manual* approved by

the Chief Administrator of the Courts and posted on the **NYSECF** website.

      If, as indicated below, I am not currently an authorized e-filing user in the

**NYSECF** System, I hereby authorize the court/E-Filing Resource Center to apply for

a user ID and password on my behalf.  For this purpose, my signature on this consent

shall be deemed my signature on the User Registration Form posted on the **NYSECF**

website.  **I understand that my primary e-mail address, listed below, will be used**

**for service of documents.**

Dated:   New York, New York                    Registered User: [X] Yes [  ] No
              April 25, 2011


CHADBOURNE & PARKE LLP

By _____
                 Thomas E. Butler
         (UCS Attorney Registration # 2483261)
                 A Member of the Firm
         Attorneys for Respondent
         30 Rockefeller Plaza
         New York, NY  10112
         (212) 408-5100
         tbutler@chadbourne.com

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

Application of VIOLY MCCAUSLAND-SEVE,

Petitioner,

For an Order Pursuant to Article 75 of the CPLR to
Stay the Arbitration of a Certain Controversy

-against-

CORE VALUE PARTNERS (LATIN AMERICA),
LLC,

Respondent.

---

Index No. 651052/2011

**NOTICE OF FILING OF
RESPONDENT'S NOTICE OF
REMOVAL PURSUANT TO
28 U.S.C. §§ 1332, 1441 AND
1446**

---

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446

and Local Civil Rule 81.1, Respondent Core Value Partners (Latin America), LLC

has filed a Notice with the United States District Court for the Southern District of

New York, removing the above-captioned proceeding from the Supreme Court of the

State of New York, County of New York, to the United States District Court for the

Southern District of New York. A true and correct copy of that Notice, and the

attachments thereto, is attached hereto.

Dated:   New York, New York
         April 25, 2011

CHADBOURNE & PARKE LLP

By _____
         Thomas E. Butler
         A Member of the Firm
Attorneys for Respondent
30 Rockefeller Plaza
New York, NY  10112
(212) 408-5100

# **The attachment to the Notice of Filing of Respondent's Notice of Removal Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 is not reproduced herein as it has previously been provided.  See Notice of Removal.**