May 10, 2011

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/18/11
```

**JENNER&BLOCK**

Jenner & Block LLP
919 Third Avenue
37th Floor
New York, NY 10022
Tel 212-891-1600
www.jenner.com

Chicago
Los Angeles
New York
Washington, DC

Andrew Weissmann
Tel (212) 891-1650
Fax (212) 909-0850
aweissmann@jenner.com

VIA FACSIMILE & HAND-DELIVERY
Hon. Victor Marrero
United States District Court
U.S. Courthouse, Suite 660
500 Pearl Street
New York, NY 10007

Re: *McCausland-Seve v. Core Value Partners (Latin America), LLC*, 11-CV-2773

Dear Judge Marrero:

Pursuant to the Court's May 3, 2011 direction, petitioner submits this letter explaining the factual and legal bases for her proposed motion to disqualify Chadbourne & Parke LLP ("Chadbourne") as counsel for respondent, Core Value Partners (Latin America), LLC ("Core Value"). The law requires disqualification where "an attorney's conduct tends to taint the underlying trial." *See Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). To prevent "trial taint," courts will disqualify counsel where an "attorney's successive representation of adverse interests raises the possibility that in the present matter he will improperly use confidences gained in the prior representation to the detriment of his former client." *See United States Football League v. N.F.L.*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (hereafter "*USFL*"). Here, Chadbourne, petitioner's former lawyers from 2006 until 2010, has already used petitioner's confidential information against her and there is a palpable risk it will continue doing so. Therefore, the Court should disqualify Chadbourne.

## FACTUAL BACKGROUND[1]

The matter before the Court arises out of an arbitration proceeding initiated by Talbert Navia ("Navia"), a Chadbourne partner and petitioner's former attorney, seeking a 40% ownership interest in petitioner's mergers and acquisitions advisory business. Navia bases his claim on a written agreement – drafted by him and other Chadbourne lawyers – between Core Value, an entity he created and controls, and petitioner ("Agreement"). The Agreement was prepared and signed while the Chadbourne firm actively represented petitioner.

From 2006 to 2010, Chadbourne represented petitioner and her businesses in connection with a wide range of matters, including estate planning, contracts, employment issues, litigation, business formation, transactions, and other matters.[2] Through its extensive work for petitioner, Chadbourne

---

[1] Petitioner set forth a more fulsome articulation of the facts in the memorandum of law she filed in support of her petition to stay the arbitration and disqualify Chadbourne. *See* Dkt. No. 1. Those facts are incorporated herein.

[2] Chadbourne bills for 2007-2008 were attached to the petition, which is in the record herein. In addition, petitioner attaches as Exhibit A hereto bills reflecting charges to her and her related companies for 2009 and 2010, as well as charges by Chadbourne for her business Cobalt Balloon LLC, for the period between 2007 and 2010. The bills are redacted to preserve client confidences. *See USFL*, 605 F. Supp. at 1461 (on a motion to disqualify, movants are not required to reveal confidential information disclosed to firm; instead courts presume such information was shared).

May 10, 2011
Page 2

was privy to her confidences and learned sensitive and confidential business information. Numerous Chadbourne attorneys in various practice groups, including Thomas Butler, worked on petitioner's matters.

The Agreement grew out of Chadbourne's advice to petitioner on the creation of new trusts and structures through which she could more efficiently conduct business (the "new venture"). As reflected in Chadbourne's legal bills, Navia and five other attorneys worked on the new venture throughout 2007 and into 2008.[3] The attorneys conducted legal and factual research, participated in conferences with petitioner and her representatives, drafted a corporate structure chart and other documents relating to the new venture, designed trusts, and drafted and reviewed the Agreement.[4] The chart that Chadbourne prepared for the new venture is central to the issues in the petition.[5]

Petitioner and Navia discussed that Navia, the lead relationship partner at Chadbourne, would participate in the new venture. Petitioner, a successful and well-known businesswoman, would contribute her name and M&A advisory skills to the new venture, while Navia would contribute his leads for new income, which he touted to petitioner. Notwithstanding the glaring conflict of interest, Navia and Chadbourne drafted the Agreement, but never advised petitioner of the conflict inherent in attorney-client business transactions nor abided by the other ethical rules governing such transactions.[6]

Petitioner asked attorneys from Wachtell, Lipton, Rosen & Katz ("Wachtell") to review drafts of the Agreement in early 2008. Wachtell reviewed drafts in early 2008, but ceased reviewing drafts thereafter as Navia told petitioner he did not approve of Wachtell's proposed edits and did not want Wachtell further representing her.[7] Petitioner followed that advice. Then, in December 2008, seven months after Wachtell stopped receiving or reviewing drafts, and while Chadbourne still represented petitioner, Navia revised the Agreement (re-inserting language previously rejected by Wachtell) and sought petitioner's signature.[8] Chadbourne did not advise petitioner to consult Wachtell or other lawyers at the time.[9]

## ARGUMENT

In cases of "successive representation," disqualification of a firm is appropriate where (1) the moving party is a former client of the adverse party's counsel; (2) there is a "substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit;" and (3) the attorney whose disqualification is sought "had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation

---

[3] The relevant Chadbourne bills (from Jan. 2007- Mar. 2008) are attached to the Petition as exhibit B to Mark Kook's affirmation ("Kook Aff."). See Dkt. No. 1.

[4] See id.

[5] See Dkt. No. 1 (Affidavit of Violy McCausland-Seve ("McCausland Aff."), ¶¶ 19-20, 27-28, 35, and Ex. A to McCausland Aff., attached to Petition).

[6] See Disciplinary Rule 5-104 of the New York Rules of Professional Responsibility, which was in effect at the time.

[7] See McCausland Aff. ¶ 36, attached to Petition.

[8] See McCausland Aff. ¶ 43; Affirmation of Joshua Holmes. ¶¶ 20-23, attached to Petition, Dkt. No. 1.

[9] See McCausland Aff. ¶ 37.

May 10, 2011
Page 3

of the client." See USFL, 605 F. Supp. at 1452.[10] Chadbourne's conduct meets all of these requirements.

First, petitioner is Chadbourne's former client. Second, there is a "substantial relationship" between Chadbourne's work for petitioner on the Agreement and the claims asserted by Core Value, Chadbourne's current client, in the underlying arbitration. Those claims all are based on and purport to construe and enforce the Agreement. See USFL, 605 F. Supp. at 1459 (a "substantial relationship" exists where "facts pertinent to problems for which the original legal services were sought are relevant to the subsequent litigation"). The connection between Chadbourne's two representations could not be clearer: Chadbourne worked on and billed petitioner for the very Agreement on which Navia bases his claims against petitioner. Not only did petitioner understand Chadbourne to be her counsel on the Agreement,[11] Chadbourne's own records demonstrate that it billed petitioner for its work on it, including for telephone conversations with Wachtell regarding the Agreement and for work forming the "Violy Group" entity named in the Agreement.[12] Further, Chadbourne's substantial "business planning" work for petitioner in 2007 and into 2008, extensively outlined in its own billing records, was undertaken to design the corporate structure that is embodied in the Agreement. Thus, the subject matter of Chadbourne's work for petitioner forms the gravamen of the arbitration demand and clearly meets the "substantial relationship" standard.

Finally, there can be no doubt that Chadbourne "had access to, or was likely to have had access to, relevant privileged information" in the course of its representation of petitioner. See USFL, 605 F. Supp. at 1452. Multiple lawyers spanning multiple practice groups were steeped in petitioner's business and legal matters. In addition, Chadbourne's client – Navia – is himself a Chadbourne partner who had access to all of petitioner's most important confidences. The danger that such confidences will be disclosed and thus "taint" the litigation is not speculative, as Chadbourne already has used petitioner's confidential information against her in the arbitration demand, in violation of the New York Rules of Professional Conduct. See Pet. Mem. of Law 22-23 (noting reliance on confidential financial and business information); Rule 1.6.

Allowing Chadbourne to continue to represent Core Value under these circumstances would irreparably harm petitioner and the integrity of the proceedings, whereas numerous able counsel can represent respondent. Petitioner should therefore be allowed to at least present her motion to disqualify Chadbourne.

Sincerely,

Andrew Weissmann

Enclosure

cc: Thomas Butler, Esq.

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by petitioner.
>
> SO ORDERED.
>
> 5-17-11
> DATE    VICTOR MARRERO, U.S.D.J.

---

[10] The entire firm may be disqualified where the client's "confidences were transmitted within the firm to other attorneys." See id. at 1466; see also N.Y. Rules Prof'l Conduct, R. 1.9(a), R. 1.10(a).

[11] See McCausland Aff. ¶¶ 27, 30.

[12] See Chadbourne bills, attached as Ex. B to Kook Aff. (time entries for Jan. 8, Jan. 28, and Feb. 29, 2008).