# CHADBOURNE & PARKE LLP

**Thomas E. Butler**
direct tel (212) 408-5283
tbutler@chadbourne.com

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100 fax (212) 541-536

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/18/11
```

May 17, 2011

Hon. Victor Marrero
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re: <u>McCausland-Seve v. Core Value Partners (Latin America), LLC,
No. 11 CV 2773 (VM)</u>

Dear Judge Marrero:

Respondent Core Value Partners hereby responds to Petitioner's May 10, 2011 letter proposing a motion to disqualify Chadbourne. A party seeking disqualification "carries a 'heavy burden'...." Cleverly Minded Ltd. v. Anthony Sicari Apparel Group Indus., Inc., 2003 WL 161317, at *2 (S.D.N.Y. Jan. 23, 2003). Disqualification motions also require a "painstaking analysis of the facts" (Bd. of Educ. v. Nyquist, 590 F.2d 1246, 1246 (2d Cir. 1979)), and the "substantial relationship" test invoked by Petitioner requires the relevant matters to be "identical" or "essentially the same." Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 392 (S.D.N.Y. 2010). As summarized below, if Petitioner's motion is allowed, Core Value would show that (1) there is no "substantial relationship" between the relevant matters, and (2) Petitioner has no basis to disqualify Chadbourne even if the matters <u>were</u> substantially related.[1]

**Factual Background: The Partnership.** This dispute (which is subject to arbitration) does not concern a proposed partnership in a wholly "new venture," separate from her existing M&A business, as Petitioner contends. Rather, it concerns Core Value's partnership interest in the <u>existing</u> business, "Violy & Co." (also known as "VMS Associates LLC" or "VMS LLC," among other names).

Core Value's principal is Talbert Navia, a Chadbourne partner who for nearly 30 years has been both a businessman and an attorney. Navia was introduced to Petitioner in 2006; they became business acquaintances and friends; and in June 2007 Petitioner asked Navia to be her partner.

---

[1] The record is currently incomplete; while Petitioner has had the benefit of referencing the brief and affidavits already filed in support of her petition to stay the arbitration and disqualify Chadbourne, Respondent has not yet filed opposition papers.

# CHADBOURNE
# & PARKE LLP

Hon. Victor Marrero  -2-  May 17, 2011

Although initially reluctant, Navia ultimately agreed, and Petitioner told him how happy she was "at the prospect of sharing Violy & Company with you as my partner . . . ." (Ex. 1.) Petitioner and Navia then began acting as partners in managing the business and executing transactions. (E.g., Ex. 2.) Navia and his children's trust fund also loaned the business substantial sums.

When they began discussing specific partnership terms, Navia advised Petitioner of the possible conflict-of-interest between them and that she should retain separate counsel. Contrary to Petitioner's claims, Navia never told her that he did not want the Wachtell Lipton firm representing her; rather, Navia suggested using Wachtell, as Petitioner acknowledged (Ex. 3), and he told Petitioner to "[f]eel free to give anything" to that firm. (Id.) Navia also understood that Petitioner was being advised by Marcus Ribiero, Violy & Co.'s Head of Legal Affairs, who had regularly advised Petitioner on personal and corporate legal matters in the past.

Navia also did not separate Petitioner from Wachtell or coerce her into signing the partnership agreement (the "Agreement") after reinserting language Wachtell had rejected. Wachtell deleted an "exclusivity" provision that Petitioner had agreed to, as demonstrated by Wachtell's "term sheet" (Ex. 4), and Navia reinstated it as drafts were exchanged. The last draft that Navia sent to Wachtell contained this provision, and on Ribiero's instructions Wachtell did not delete it. (See Holmes Aff. submitted by Petitioner, ¶¶ 20-21.) The Agreement was not executed until December 12, 2008, when Petitioner insisted that it finally be signed. At that time, Navia carefully reviewed the Agreement, including the exclusivity provision, with Petitioner, and the Agreement was signed in a ceremony with other Violy & Co. personnel present.

**Chadbourne & Parke's Work for Petitioner**. Many months before Petitioner asked Navia to be her partner, Petitioner had retained Chadbourne to provide estate planning advice and to create a potential business structure to provide asset protection, including for future businesses. Except for estate planning, this work, reflected in the chart Petitioner references, was largely completed before Petitioner asked Navia to be her partner. However, the proposed structure was never implemented. Moreover, this work did not include advice regarding the subsequent partnership discussions between Navia and Petitioner, or the negotiation of the Agreement, and it played no role in the partnership.[2]

**Core Value's Opposition**. Contrary to Petitioner's claims, the Agreement did not grow out of Chadbourne's prior work on business structures. Furthermore, that work is not "substantially related" to the subsequent partnership discussions within the meaning of the Second Circuit's strict test. This dispute is not about Petitioner's business structures per se or the creation of any

---

[2] Chadbourne handled certain other discrete matters for McCausland and Violy & Co. as well, none of which is in any way related to the partnership discussions, and for which it has never been paid.

# CHADBOURNE
# & PARKE LLP

Hon. Victor Marrero -3- May 17, 2011

particular business entity; it is about the partnership discussions between Petitioner and Navia, their intent in that regard, and the negotiated Agreement. Wachtell and Violy & Co.'s Head of Legal Affairs -- not Chadbourne -- represented Petitioner on those matters.[3] While Chadbourne provided the structures chart to, and briefly discussed it with, Wachtell, it did so at Petitioner's request only to make Wachtell aware of the structure that Petitioner had at one time considered. That proposed structure was never relevant to the partnership discussions or the Agreement, and it does not present issues that are identical or essentially the same as those in this case.

Finally, even if the matters were substantially related (which they are not), the purpose served by the test -- to protect the former client's confidences learned in the prior matter from being used in the subsequent matter -- is inapplicable here. Petitioner can claim no such protection, because she has waived privilege and confidentiality concerning Chadbourne's "structures" representation by producing the "structures" chart in this proceeding and discussing it in her affidavit. Petitioner also accuses Navia of violating his legal and ethical obligations in his dealings with her. While these claims will be shown to be without merit, under the ethics rules and case law Navia may use attorney-client confidences as necessary to defend against such accusations, and this would be so even if Chadbourne were disqualified and he retained another firm.[4] Chadbourne's disqualification is thus not only unwarranted; it would be pointless.

Respectfully submitted,

Thomas E. Butler

VIA FACSIMILE AND HAND DELIVERY

cc: Mark Kook, Esq. (Via Facsimile and Hand Delivery)
    Andrew Weissmann, Esq. (Via Facsimile and Hand Delivery)

---

[3] One Chadbourne bill (which Petitioner never paid) erroneously includes de minimus time billed on one day (January 28, 2008) by two attorneys who reviewed the Agreement. That time does not reflect the extensive discussions between Petitioner and Navia and numerous drafts of the Agreement that were produced, and does not support a claim that Chadbourne represented Petitioner in that connection.

[4] Despite Petitioner's admission that the partnership discussions and the negotiation and execution of the Agreement concern a business relationship, (see, e.g., McCausland Aff. ¶¶ 20, 22, 27 (referring to discussions with Navia "to go into business together" and discussions concerning "a business relationship")), she erroneously contends that Navia's arbitration demand reveals confidences derived from an attorney-client relationship.

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by respondent.

SO ORDERED.

5-17-11
DATE     VICTOR MARRERO, U.S.D.J.